UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COREY D. MARTIN,

                            Petitioner,

     v.                                                    7:06-CV-312

SECRETARY OF THE ARMY and COMMANDER,
10th MOUNTAIN DIVISION (LI), Fort Drum, New
York,

                            Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

COSTELLO, COONEY & FEARON, P.L.L.C.     SAMUEL C. YOUNG, ESQ.
Attorneys for Petitioner
205 South Salina Street
Fourth Floor
Syracuse, New York 13202

NEW YORK CIVIL LIBERTIES UNION         DEBORAH H. KARPATKIN, ESQ.
FOUNDATION
Attorneys for Petitioner
99 Park Avenue
Suite 1600
New York, New York 10016

HON. GLENN T. SUDDABY                   CHARLES E. ROBERTS, ESQ.
United States Attorney                          Assistant United States Attorney
Attorney for Respondents
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-5165

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

### **I. BACKGROUND**

In 2001, petitioner Corey D. Martin ("petitioner" or "Martin") enlisted in the United States Army ("Army"). Martin eventually rose to the rank of sergeant and was stationed at Fort Drum in New York. In November 2005, after several years of reading, studying, and personal reflection, Martin realized that he was morally and ethically opposed to all wars. In December 2005, he submitted an application for discharge from the Army on grounds of conscientious objection to participation in all wars. In compliance with Army protocol, an officer was appointed to investigate the sincerity of Martin's conscientious objector claim. On February 8, 2006, just hours before Martin was scheduled to deploy to Afghanistan, the investigating officer issued a report finding Martin's conscientious objector claim to be sincere and recommending that he be discharged from the Army. As a result, Martin's deployment orders for that day were rescinded. Shortly thereafter, new deployment orders were issued requiring Martin to deploy to Afghanistan on March 14, 2006. According to the petition, several of Martin's superior officers, displeased that he was able to avoid deployment to Afghanistan on conscientious objector grounds, were instrumental in procuring the new deployment orders.

On March 10, 2006, Martin filed this action pursuant to a petition for a writ of habeas corpus and other relief against the Secretary of the Army and the Commander, 10th Mountain Division (LI), Fort Drum, New York (collectively "respondents"). After oral argument via telephone, an order to show cause and temporary restraining order ("TRO") were issued that same day, prohibiting respondents from ordering petitioner to deploy to Afghanistan or any other region of military conflict pending a hearing on the order to show cause. Prior to

the scheduled hearing date, respondents agreed not to deploy petitioner to Afghanistan or any other region of military conflict until a final decision was rendered on his conscientious objector status. Thereafter, the parties entered into a stipulation to stay the petition until such a decision was finally rendered and respondents agreed not to deploy the petitioner in the meantime. On March 20, 2006, the stipulation became part of a formal order.

In April 2006, petitioner's application for discharge was approved, and on May 18, 2006, he was honorably discharged from the Army. Shortly thereafter, respondents moved to dismiss his habeas corpus petition for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Martin did not oppose respondents' motion to dismiss the petition but cross-moved for attorney fees and costs pursuant to the Equal Access to Justice Act. Respondents opposed the cross-motion for attorney fees and costs. Petitioner filed a reply. On September 15, 2006, an order was issued granting respondents' motion to dismiss the petition. Petitioner's cross-motion for attorney fees and costs and respondents' opposition, taken on submit, are considered below.

## II. DISCUSSION

### A. Equal Access to Justice Act

Petitioner cross-moves for attorney fees and costs pursuant to the Equal Access to Justice Act ("the EAJA"), 28 U.S.C. § 2412, which provides, in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The two central issues with respect to petitioner's motion under this section are (1) whether petitioner is a "prevailing party," and (2) whether respondents' position was "substantially justified."

**1. "Prevailing Party"**

Despite the United States Supreme Court's view that the term "prevailing party," recurrent in federal fee-shifting statutes, has a "rather clear meaning," Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 607, 121 S. Ct. 1835, 1841 (2001) (5-4 decision), courts have long struggled to define and apply the term in harmony with the intent of Congress. To be sure, the term encompasses a party "'in whose favor a judgment is rendered,'" id. at 603, 121 S. Ct. at 1839 (quoting Black's Law Dictionary 1145 (7th ed. 1999)), or who "'has prevailed on the merits of at least some of his claims,'" id. (quoting Hanrahan v. Hampton, 446 U.S. 754, 758, 100 S. Ct. 1987, 1989 (1980)). However, "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Tex. State Teachers Ass'n v. Farland Indep. School Dist., 489 U.S. 782, 792-93, 109 S. Ct. 1486, 1494 (1989); see also Buckhannon, 532 U.S. at 604, 121 S. Ct. at 1840 (citing Texas State Teachers Ass'n, 489 U.S. at 792-93, 109 S. Ct. at 1494). In other words, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Tex. State Teachers Ass'n, 489 U.S. at 792, 109 S. Ct. at 1493. The Buckhannon Court stopped short of adopting the so-called "catalyst theory" – which would allow for an award of attorney fees where judicial intervention was in some way a catalyst for but not the direct cause of the change in the parties' legal relationship – because "[a] defendant's voluntary change in conduct, although perhaps accomplishing what

the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." 532 U.S. at 605, 121 S. Ct. at 1840.  However, where a plaintiff realizes the objective of his lawsuit (and thereby changes the legal relationship of the parties) by way of a judgment on the merits or a court-ordered consent decree, he is considered the prevailing party and attorney fees can be awarded.  See Union of Needletrades, Indus. & Textile Employees v. U.S. Immigration & Naturalization Serv., 336 F.3d 200, 204-05 (2d Cir. 2003); Buckhannon, 532 U.S. at 604-05, 121 S. Ct. at 1840.

In this case, Martin filed a petition against respondents requesting the issuance of (1) a writ of habeas corpus directing respondents to show cause for petitioner's continued military custody and deployment to Afghanistan while his application for discharge was pending; (2) a TRO, followed by preliminary and permanent injunctions, blocking petitioner's deployment to Afghanistan or any other region of military conflict while his application for discharge was pending; (3) a writ of mandamus compelling respondents to render a decision with respect to petitioner's application for discharge, or, alternatively, ordering his release from military custody; and (4) an order awarding attorney fees and costs.  A TRO was issued blocking petitioner's deployment until a hearing on the order to show cause could take place.  On March 20, 2006, before the hearing, the parties entered into a stipulation whereby petitioner would not be deployed while his application for discharge on conscientious objector grounds was pending.  An order granting the stipulation and staying the petition was entered that same day.

It is quite clear that the primary objective of Martin's petition was to prevent his deployment to Afghanistan or any other region of military conflict while his application for discharge was pending.  As a result of the TRO and stipulation, which received formal judicial

imprimatur in the form of a court-ordered consent decree, Martin realized that objective and the parties' legal relationship was materially altered. Therefore, petitioner is a prevailing party under the EAJA.

### 2. "Substantially Justified"

Even if a party has demonstrated that it is a prevailing party under the EAJA, no award of attorney fees and costs will be made if the position of the United States[1] is "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The term "substantially justified" means "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550 (1988) (internal quotation marks omitted); Comm'r, Immigration & Naturalization Serv. v. Jean, 496 U.S. 154, 158 n.6, 110 S. Ct. 2316, 2319 n.6 (1990). The United States must demonstrate that its position had "'a reasonable basis in both law and fact.'" Pierce, 487 U.S. at 565, 108 S. Ct. at 2550 (quoting Foster v. Tourtellotte, 704 F.2d 1109, 1112 (9th Cir. 1983)); see Vacchio v. Ashcroft, 404 F.3d 663, 674 (2d Cir. 2005) (citing Sotelo-Aquije v. Slattery, 62 F.3d 54, 57 (2d Cir. 1995)).

In this case, petitioner was originally scheduled to deploy to Afghanistan on February 8, 2006. However, just hours before his deployment, the officer appointed to investigate the sincerity of his conscientious objector claim handed down a report

---

[1] The EAJA provides:

"[P]osition of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings.

§ 2412(d)(2)(D). Thus, the position of the United States in this case is the Army's insistence that petitioner be deployed to Afghanistan while his application for discharge was pending, and its ensuing opposition to Martin's petition.

recommending that Martin be discharged from the Army on conscientious objector grounds. "As a result of the investigating officer's recommendation, petitioner was not required to deploy to Afghanistan." Resp'ts Mem. 1. Shortly thereafter, despite the investigating officer's recommendation, new orders were issued requiring petitioner to deploy to Afghanistan on March 14, 2006. The fact that the Army rescinded his original deployments orders as a result of the investigating officer's recommendation and then reissued such orders a short time later without any change in the status of his application or the recommendation suggests that this action was not reasonable in fact, and thus not substantially justified. Since the government bears the burden of showing that the Army was substantially justified, Sotelo-Aquije, 62 F.3d at 57, but has failed to do so, petitioner is entitled to an award of attorney fees and costs under the EAJA.

### B. Amount of Award

Having determined that petitioner is entitled to an award of attorney fees and costs under the EAJA, the next step is determining the amount to which he is entitled. Petitioner argues that he is entitled to attorneys' fees at an enhanced rate under the EAJA, which provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

#### 1. Special Factor Exception

With respect to the special factor exception to the statutory cap of $125 per hour, the United States Supreme Court has held that the phrase "limited availability of qualified attorneys for the proceedings involved" refers to "attorneys qualified for the proceedings in

some specialized sense, rather than just in their general legal competence. . . . [and] to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question – as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." Pierce, 487 U.S. at 572, 108 S. Ct. at 2554 (internal quotation marks omitted). According to the Pierce Court, "[e]xamples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language." Id. Some courts of appeals have narrowly construed Pierce, holding that fee enhancement is available only for lawyers who have acquired some specialized training or expertise beyond that which can and should be acquired by an ordinary lawyer through study and experience. See, e.g., F.J. Vollmer Co. v. Magaw, 102 F.3d 591, 598 (D.C. Cir. 1996); Hyatt v. Barnhart, 315 F.3d 239, 253 (4th Cir. 2002); Estate of Cervin v. Comm'r of Internal Revenue, 200 F.3d 351, 354 (5th Cir. 2000). Other courts of appeals and some district courts have construed Pierce more expansively, holding that fee enhancement is available for lawyers with specialized expertise in specific and often complex areas of law. See, e.g., Raines v. Shalala, 44 F.3d 1355, 1361 (7th Cir. 1995); Pirus v. Bowen, 869 F.2d 536 (9th Cir. 1989) (social security law); Jean v. Nelson, 863 F.2d 759 (11th Cir. 1988) (immigration law); Nat'l Labor Relations Bd. v. Pueblo of San Juan, 305 F. Supp. 2d 1229 (D.N.M. 2003) (Indian law); Conn. State Dep't of Soc. Servs. v. Thompson, 289 F. Supp. 2d 198 (D. Conn. 2003) (Medicare law).[2]

---

[2] Petitioner cites "Select Milk Producers v. Veneman, 304 F. Supp. 2d 45 (D.C. Cir. 204 [sic])" for the proposition that attorneys with specialized knowledge of federal milk marketing regulations are entitled to an enhanced fee under the special factor exception. Pet'rs Mem. 11. First, Veneman was a district court case, not a circuit court case. Second, in Select Milk Producers, Inc. v. Johanns, 400 F.3d 939 (D.C. Cir. 2005), the D.C. Circuit reversed Veneman on that very point of law, holding that the district court abused its discretion in finding that specialized knowledge of federal milk marketing regulations are entitled to an enhanced fee because such knowledge was acquired through "practice in a specific area of administrative law." Johanns, 400 F.3d at 950-51. Therefore, petitioner's citation to Veneman, which is presumably the result of inattentive research rather than a desire to mislead, will be disregarded.

In this case, petitioner argues that his attorneys possess specialized knowledge in military and conscientious objector law and should therefore be entitled to fees at an enhanced rate. In support of this contention, petitioner has submitted the declaration of J.E. McNeil, Executive Director of the Center on Conscience and War, who states that there are fewer than a dozen attorneys across the nation who are qualified in this area of law. McNeil Decl. 2. Returning to the text of § 2412(d)(2)(A), surely this indicates that there is a "limited availability of qualified attorneys for the proceedings involved." Moreover, petitioner's lead attorney, Ms. Karpatkin, was required to employ her expertise in this area of law during this matter. Therefore, applying the line of cases construing Pierce more broadly, the special factor exception to the statutory cap of $125 per hour applies with respect to Ms. Karpatkin.

Respondents do not dispute the number of hours expended by petitioner's attorneys in this case.[3] The rates suggested by petitioner, however, are not appropriate under the circumstances. After consideration of the circumstances of this case, it is determined that petitioner's attorneys are entitled to fees at the following rates:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Deborah Karpatkin, Esq. | 55.1 | $175.00 | $9,642.50 |
| Samuel C. Young, Esq. | 19.2 | $125.00 | $2,400.00 |
| Michael Porciello (law clerk) | 6.2 | $50.00 | $310.00 |
| | | Total Award: | $12,352.50 |

---

[3] Deborah K. Karpatkin, Esq., expended 55.1 hours; Samuel C. Young, Esq., expended 19.2 hours; and Michael Porciello (law clerk) expended 6.2 hours. Karpatkin Decl. 7.

### 2. Cost of Living Exception

Under § 2412(d)(2)(A), it is entirely within the discretion of district courts to determine whether an increase in the cost of living justifies a higher fee. See § 2412(d)(2)(A); Begley v. Sec'y of Health & Human Servs., 966 F.2d 196, 199-200 (6th Cir. 1992); Headlee v. Bowen, 869 F.2d 548, 551-52 (10th Cir. 1989); see also Kerin v. U.S. Postal Serv., 218 F.3d 185, 194 (2d Cir. 2000) ("[O]n remand the district court may choose to apply a cost of living adjustment.") (emphasis added). Since it has been determined that petitioner is entitled to fees at an enhanced rate under the special factor exception, no enhancement under the cost of living exception will be awarded.

### III. CONCLUSION

For the reasons discussed above, petitioner is entitled to an award of attorney fees under the EAJA at the rates set forth above.

Therefore, it is

ORDERED that

1. Petitioner's cross-motion for attorney fees and costs pursuant to 28 U.S.C. § 2412 is GRANTED;

2. Petitioner is awarded attorney fees in the amount of $12,352.50.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

United States District Judge

Dated: December 4, 2006
      Utica, New York.